UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

PETER ROSKOVENSKY,

      Plaintiff,

v.

                                   Case No.: 2:22-cv-602-JLB-NPM

SANIBEL CAPTIVA ISLAND VACATION
RENTALS, LLC,

      Defendant.

_____/

## **ORDER**

      This cause comes before this Court upon the Parties' Cross-Motions for Summary Judgment. (Docs. 36, 49). The Court is fully briefed on the matter.[1]  For the reasons discussed below, Defendant Sanibel Captiva Island Vacation Rentals, LLC's ("Sanibel") Motion for Summary Judgment (Doc. 36) is **GRANTED** in part and **DENIED** in part, and Plaintiff Peter Roskovensky's Motion for Summary Judgment (Doc. 49) is **DENIED**.

---

[1] Mr. Roskovensky responded to Sanibel's Motion for Summary Judgment (Doc. 44). Sanibel also responded to Mr. Roskovensky's Motion for Summary Judgment (Doc. 54).

## BACKGROUND[2]

This is a copyright infringement case.  Mr. Roskovensky is a professional photographer.  (Doc. 50 at ¶ 4).  Mr. Roskovensky's photography work includes creating images of properties in Florida, which he licenses to third parties.  (Doc. 50 at ¶ 4).

Sanibel is in the business of marketing vacation rental properties.  (Doc. 36 at 1; Doc. 50-4 at 1).  To that end, Sanibel operates a website and a Facebook account where it posts pictures of the properties that it manages.  (Doc. 49 at 3–4).

---

[2] In Mr. Roskovensky's response to Sanibel's Motion for Summary Judgment (Doc. 44), Mr. Roskovensky correctly points out that Sanibel's Motion for Summary Judgment (Doc. 36) fails to comply with this Court's rules governing statements of material facts.  Critically, Sanibel's Statement of Facts includes very few citations to the record and no pinpoint citations.  *See Salas v. AMC E. Communities, LLC*, No. 8:20-CV-688-T-33CPT, 2020 WL 13228407, at *1 (M.D. Fla. Apr. 30, 2020) ("When resolving a motion for summary judgment, the Court has no independent duty to search and consider any part of the record not otherwise referenced and pinpoint cited in the statement of material facts and response thereto.  *See* Fed. R. Civ. P. 56(c)(3) ('The court need consider only the cited materials, but it may consider other materials in the record.')").  Mr. Roskovensky urges the Court to deny Sanibel's Motion for Summary Judgment on this basis alone.  (Doc. 44 at 1−2).  While the Court agrees that Sanibel's Statement of Facts is non-compliant, it will still consider Sanibel's Motion.  However, the Court's decision will be based only upon competent record evidence.  *See Tippens v. Celotex Corp.*, 805 F.2d 949, 952 (11th Cir. 1986) ("The District Court shall consider all evidence in the record when reviewing a motion for summary judgment—pleadings, depositions, interrogatories, affidavits, etc. . . ."); *Macuba v. Deboer*, 193 F.3d 1316, 1322−23 (11th Cir. 1999) ("The general rule is that inadmissible hearsay cannot be considered . . . .") (footnote and internal quotation marks omitted).

### *Mr. Roskovensky Photographs the Property for the First Time*

On April 8, 2019, Mr. Roskovensky took a series of photographs (the "Pre-existing Images") of 1175 Sand Castle Road, Sanibel, Florida (the "Property").  (Doc. 50 at ¶ 7).  The Pre-existing Images included images of both the Property's interior (the "Pre-existing Interior Images") and the Property's exterior.  (Doc. 50 at ¶ 7; Doc. 50-1 at 1–13[3]).  Mr. Roskovensky created these Pre-existing Images so that VIP Realty Group of Sanibel, Florida ("VIP"), a non-party in these proceedings, could use them to market the Property.  (Doc. 50 at ¶ 9).

Also on April 8, 2019, Mr. Roskovensky applied to the United States Copyright Office (the "USCO") to register the Pre-existing Images, which were ultimately registered under Registration No. VA 2-159-469.  (Doc. 50 at ¶ 8; Doc. 50-2).

### *Sanibel Requests Permission to Use the Pre-existing Images*

Sometime after Mr. Roskovensky created the Pre-existing Images for VIP, Sanibel began managing the Property.  (Doc. 50-4 at 1).  To that end, on August 15, 2019, Sanibel's Owner Relations Concierge, Sue Plein, contacted VIP and asked if Sanibel could use the Pre-existing Images[4] such that it could "quickly" market the

---

[3] Mr. Roskovensky has only provided the Court with the Pre-existing Interior Images and has not provided the Pre-existing Images that capture the Property's exterior.

[4] Specifically, Ms. Plein emailed VIP to ask about using a subset of the Pre-existing images—only those photos that capture the "exterior" of the Property.  There is no evidence that Mr. Roskovensky was copied on this email.

Property.  (Doc. 50 at ¶ 11; Doc. 50-4 at 1–2).  VIP said that it "had to ask [Mr. Roskovensky] first."  (Doc. 50-4 at 2).

Thereafter, on August 16, 2019, Mr. Roskovensky wrote to Ms. Plein and told her that he was "more than happy to allow the usage of the images."  (Doc. 50-4 at 3).[5]  Mr. Roskovensky offered to allow Sanibel to use the "the images" for a duration of "90 days" in exchange for a payment of $75.00.  (Doc. 50-4 at 3).  Ms. Plein thanked Mr. Roskovensky for his offer.  (Doc. 50-4 at 3).  A few days later, on August 22, 2019, Mr. Roskovensky sent an email to Ms. Plein providing her a "link to the photo downloads."[6]  (Doc. 50-4 at 4).  When Mr. Roskovensky provided Ms. Plein with the link to the photographs, he told her that she could "start using the photos," and that he would send her an invoice that would "include usage until November 30th, 2019."  (Doc. 50-4 at 4).

Mr. Roskovensky has provided a copy of an invoice, which he created dated August 22, 2019 (the "Invoice").  (Doc. 50-6).  Mr. Roskovensky construes the Invoice

_____

[5] While Mr. Roskovensky testified that Ms. Plein "requested permission to use certain exterior pictures" of the Property (Doc. 50 at ¶ 11), the record does not support that Ms. Plein's request to Mr. Roskovensky was quite so narrow.  Indeed, in his writing to Ms. Plein, Mr. Roskovensky did not distinguish between the Pre-existing Images of the Property's exterior and the Pre-existing Interior Images.  (Doc. 50-4 at 3–4).  And while Ms. Plein did ask VIP Realty to specifically use exterior photos of the Property, the Court does not find that Ms. Plein and Mr. Roskovensky's written communications were limited to a discussion of the exterior photos.  (*Compare* Doc. 50-4 at 1 *with* Doc. 50-4 at 3–4).  Further, while the Court acknowledges that Ms. Plein's October 25, 2019 email to Mr. Roskovensky expressly states that Mr. Roskovensky granted Sanibel the right to use the exterior images of the Property, Ms. Plein's email is silent as to Sanibel's rights to use the Pre-existing Interior Images.  (Doc. 50-4 at 8).

[6] The link that Mr. Roskovensky sent to Ms. Plein has not been made accessible to the Court.

as a "copy of the temporary license" that he provided to Sanibel.  (Doc. 50 at ¶ 12).

The Invoice described that Mr. Roskovensky was providing Sanibel with a license

for "temporary use of images" of the Property and again provided an "images

download link." (Doc. 50-6).[7]  The Invoice does not distinguish between use of the

exterior and interior Pre-existing Images of the Property available at the download

link.  (Doc. 50-6).  The Invoice also defines the term length of the "temporary use" in

two seemingly contradictory ways.  First, the Invoice states that the "images may be

used for marketing purposes until November 30th, 2019," and second, the Invoice

purports to grant Sanibel a "license" to use the images for "six months," which

would ostensibly permit a license to use the images until February 22, 2020.  (Doc.

50-6).  In all events, Sanibel paid the $75.00 fee.  (Doc. 50-6).

At the time that Mr. Roskovensky provided the temporary license to Sanibel

on August 22, 2019, he anticipated that Sanibel would engage him to take

*additional* photographs of the Property's interior; but Sanibel had not yet hired him

---

[7] Here again, the link that Mr. Roskovensky included in the Invoice has not been
made accessible to the Court. However, the Parties seem to agree that the link
contained in the Invoice provided Sanibel with access to the Pre-existing Interior
Images. For Sanibel's part, it asserts that the Invoice's "download link [contained]
unrestricted access" to the Pre-existing Interior Images. (Doc. 54 at 2). And Mr.
Roskovensky agrees that "the email communications submitted with [his]
Complaint" demonstrate that Sanibel "had access to the Pre-Existing Images." (Doc.
49 at 10). The Court presumes that Mr. Roskovensky is referring to the email
available at Doc. 50-4 at 4, which contains a link that is identical to the one
contained in the Invoice (Doc. 50-6). Based on this, the Court concludes that it is
undisputed that the link contained in the Invoice provided Sanibel with access to
the Pre-existing Interior Images.

to do so and had merely inquired about his rates "for future info."  (Doc. 50 at   ¶ 14; Doc. 50-4 at 3).

***Mr. Roskovensky Photographs the Property for a Second Time***

On October 25, 2019, Ms. Plein wrote to Mr. Roskovensky to "schedule a reshoot for the interior photos" of the Property because the interior had been improved since the Pre-existing Images were taken by Mr. Roskovensky.  (Doc. 50 at ¶ 17; Doc. 50-4 at 8).  Consequently, on November 20, 2019, Mr. Roskovensky "authored a new set of photographs, consisting of both interior and exterior captures" (the "Second Set of Images").  (Doc. 50 at ¶ 18; Doc. 50-1 at 14–47).  The Second Set of Images included "a total of 40 new photos."  (Doc. 50-4 at 11).

Also on November 20, 2019, Mr. Roskovensky wrote to Ms. Plein to inform her that the Second Set of Images were "finished and ready for use."  (Doc. 50-4 at 11).  In this same email, Mr. Roskovensky provided Sanibel with access to the Second Set of Images through an internet download link.  (Doc. 50-4 at 11).  Mr. Roskovensky explained the fee structure for use of the photographs and that Sanibel would also have to pay $500 to purchase "Image Licensing," for the use of the Second Set of Images for three years.  (Doc. 50-4 at 11).[8]  Neither Ms. Plein, nor

---

[8] In this same email, Mr. Roskovensky asserted that Sanibel had impermissibly used photographs from the Pre-Existing Images of the Property's interior.  (Doc. 50-4 at 11).  Mr. Roskovensky asserted that he and Sanibel "had an agreement that [Sanibel] may use the exterior photos" of the Property, not the interior photos, demanding an additional $250.00 for Sanibel's use of the interior photographs. (Doc. 50-4 at 11).

any other Sanibel employee, responded to Mr. Roskovensky's email. (Doc. 50 at ¶¶ 23–25).

About two months later, on January 14, 2020, Mr. Roskovensky followed up with Ms. Plein, informing her that he had deactivated the download link for the Second Set of Images and demanding payment on or before January 17, 2020.  (Doc. 50-4 at 12).  Mr. Roskovensky's email did not request that Sanibel cease or desist using the Second Set of Images and did not warn Sanibel that continued use of the images would constitute copyright infringement.  (Doc. 50-4 at 12).  Instead, Mr. Roskovensky informed Sanibel that he would charge "additional fees" for the "non authorized use of images."  (Doc. 50-4 at 12).  Ms. Plein also did not respond to this email and Sanibel did not render payment.  (Doc. 50 at ¶¶ 23–25, 28).

On January 7, 2020, the Second Set of Images were registered by the USCO under Registration No. VA 2-186-855.  (Doc. 50 at ¶ 19).  Thereafter, on January 17, 2020, Mr. Roskovensky sent Ms. Plein another email demanding payment for the Second Set of Images by January 20, 2020.  (Doc. 50-4 at 13).  Again, neither Ms. Plein nor anyone from Sanibel responded to Mr. Roskovensky's email. (Doc. 50 at ¶¶ 23–25, 28).

***Sanibel Uses the Second Set of Images***

According to Mr. Roskovensky, on January 22, 2020,[9] he viewed Sanibel's website and discovered that Sanibel had posted photographs from the Second Set of

_____

[9] While Mr. Roskovensky's declaration asserts that he observed Sanibel's use of the Second Set of Images on January 22, 2020 (Doc. 50 at ¶ 29), the screenshots that

Images to its website.  (Doc. 50 at ¶ 29; Doc. 50-5 at 14–47).  Sanibel also posted photographs from the Second Set of Images on its Facebook page.  (Doc. 50-5 at 48–49).

Mr. Roskovensky also observed that Sanibel "continued to display images from the set of Pre-existing Images on its Website, despite the fact that the temporary license [he] granted [Sanibel] expired on November 30, 2019."  (Doc. 50 at ¶ 30).  In support of this statement, Mr. Roskovensky directs the Court to a single photograph of a bathroom—located in the interior of the Property—that appears to have been displayed on Sanibel's website on January 13, 2020.  (Doc. 50 at ¶ 30; Doc. 50-5 at 12[10]).[11]  Mr. Roskovensky does not allege that he contacted Sanibel again after he discovered that Sanibel was using the Second Set of Images on January 22, 2020.  He ultimately alleges that Sanibel's violation of his copyrights was willful. (Doc. 50 at ¶ 31).

Mr. Roskovensky points to in support of his statement (Doc. 50-5 at 14–47) are dated January 13, 2020.
[10] The screen capture provided to the Court appears to bear the date "1/13/2020" in the bottom righthand corner.
[11] There appears to be a tension between Mr. Roskovensky's declaration and other positions that he has taken throughout this litigation. This is because the photograph from the Pre-existing Images that Sanibel continued to display after November 30, 2019 (Doc. 50-5 at 12) is an *interior* photograph and Mr. Roskovensky has always claimed that the Pre-existing Interior photographs were not subject to the temporary license in the first place (*see, e.g.,* Doc. 1 at ¶ 42; Doc 50 at ¶ 14).

*The Claim*

Mr. Roskovensky alleges one count for direct copyright infringement against Sanibel, based on Sanibel's use of Pre-existing Interior Images and the Second Set of Images.  (Doc. 1 at ¶¶ 22, 27, 35, 65–72).

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the movant can show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  "A district court must grant a motion for summary judgment only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Essex Ins. Co. v. Barrett Moving & Storage, Inc.*, 885 F.3d 1292, 1299 (11th Cir. 2018) (citation and internal quotation marks omitted).  An issue is "genuine" if a rational trier of fact, viewing all of the record evidence, could find in favor of the nonmoving party.  *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014).  And a fact is "material" if, "under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004).  "[W]here the material facts are undisputed and do not support a reasonable inference in favor of the non-movant, summary judgment may properly be granted as a matter of law." *DA Realty Holdings, LLC v. Tenn. Land Consultants, LLC*, 631 F. App'x 817, 820 (11th Cir. 2015).

## DISCUSSION

### A. Copyright Infringement

To establish a prima facie case of copyright infringement, a plaintiff must prove: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991). To satisfy the first prong, "a plaintiff must prove that the work ... is original and that the plaintiff complied with applicable statutory formalities." *Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1541 (11th Cir. 1996) (quoting *Lotus Dev. Corp. v. Borland Int'l, Inc.*, 49 F.3d 807, 813 (1st Cir. 1995)) (internal quotation marks omitted). In a judicial proceeding, a "certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate. 17 U.S.C. § 410(c). Once the plaintiff produces a certificate of registration, "the burden shifts to the defendant to demonstrate why the claim of copyright is invalid." *Bateman*, 79 F.3d at 1541.

The parties here do not dispute that Mr. Roskovensky had valid copyrights for all of the images at issue here. Rather, Sanibel argues that it possessed a nonexclusive license to use all of the Pre-existing Interior Images and the Second Set of Images. (Doc. 36 at 3).

### B. License to use Copyrighted Material

The existence of a license to use copyrighted material is an affirmative defense to a claim of copyright infringement, insofar as "a copyright owner who

grants a nonexclusive license to use his copyrighted material waives his right to sue the licensee for copyright infringement." *Fodere v. Lorenzo*, No. 09-CV-23120, 2011 WL 465468, at *4 (S.D. Fla. Feb. 4, 2011) (quoting *Sun Microsystems, Inc. v. Microsoft Corp.*, 188 F.3d 1115, 1121 (9th Cir. 1999)) (internal quotation marks omitted), *aff'd*, 441 F. App'x 666 (11th Cir. 2011).

However, because a nonexclusive license does not transfer *ownership* of the copyright, the licensor can bring suit for copyright infringement if the licensee's use goes beyond the scope of the nonexclusive license. *See Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1235 (11th Cir. 2010). That is, "[i]mplied licenses may be limited and a defendant who exceeds the scope of an implied license commits copyright infringement." *Id.* (citing *Atkins v. Fischer*, 331 F.3d 988, 992 (D.C. Cir. 2003)). Because a license is an affirmative defense, "the alleged infringers have the burden of establishing an implied license." *Id.* (internal quotation marks omitted).

Whether a copyright owner has granted a nonexclusive license is determined by state contract law, not federal copyright law. *Foad Consulting Group, Inc. v. Musil Govan Azzalino,* 270 F.3d 821, 827 (9th Cir. 2001) ("[S]tate law determines whether a copyright holder has granted [a nonexclusive] license."). "A nonexclusive license to use copyrighted material may be granted orally or implied from conduct." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 956 (11th Cir. 2009).

## C. *Sanibel's License to use the Pre-existing Interior Images*

The parties agree the Invoice "memorialized the terms of the temporary and limited agreement in a license" for Sanibel to use at least *some* of the Pre-existing

11

Images.  (Doc. 49 at 6; Doc. 36 at 4–5).  However, the parties disagree over two terms of the agreement: (1) the scope of the images that were subject to the license; and (2) the duration of the license.  The Court must therefore attempt to interpret the terms of the Invoice by applying Florida state contract law.  The interpretation of a contract presents a question of law, as does the determination of whether a contract is ambiguous.  *See Alliance Metals, Inc., of Atlanta v. Hinely Indus., Inc.,* 222 F.3d 895, 900 (11th Cir. 2000) ("Interpretation of a contract poses a question of law."); *Orkin Exterminating Co. v. FTC,* 849 F.2d 1354, 1360 (11th Cir. 1988) ("the question of whether a contractual ambiguity exists is also a question of law").

Turning first to the scope of images that were subject to the license, Mr. Roskovensky claims that he only authorized Sanibel to use the Pre-existing Images—"exterior captures"—of the Property and did not authorize Sanibel to use the Pre-existing Interior Images.  (Doc. 50 at ¶ 14).  In support of his position, Mr. Roskovensky argues that the terms of the license are ambiguous and that the Court should rely on parol evidence to interpret the license's scope.  (Doc. 44 at 10).  Sanibel construes the license more broadly and urges the Court to interpret the term "images" to encompass all of the Pre-existing Images as well as the Second Set of Images.  (Doc. 36 at 3).[12]

---

[12] While Mr. Roskovensky claims that Sanibel "admitted it was not authorized to use or display the interior captures from the Pre-Existing Images identified in Plaintiff's Complaint," the Court cannot find, and Mr. Roskovensky has not supplied, any support for that proposition within the record.  (Doc. 49 at 11).  The Court surmises that Mr. Roskovensky is relying on a set of Requests for Admission ("RFAs") that Sanibel failed to respond to and has therefore been deemed admitted.  (*See* Doc. 47 at 2).  Specifically, the Court believes Mr. Roskovensky is drawing from

To decide this issue, the Court must first determine if there is any ambiguity on the face of the contract.  *Acceleration Nat'l Serv. Corp. v. Brickell Fin. Servs. Motor Club, Inc.*, 541 So. 2d 738, 739 (Fla. 3d DCA 1989) ("In the absence of an ambiguity on the face of a contract, it is well settled that the actual language used in the contract is the best evidence of the intent of the parties, and the plain meaning of that language controls.").  This is because when a contract is unambiguous, the parol evidence rule bars the consideration of extrinsic evidence. *Saregama India Ltd. v. Mosley*, 635 F.3d 1284, 1290 (11th Cir. 2011).

Here, the Court finds that the terms of the Invoice were unambiguous with respect to the scope of the images subject to the license.  The Invoice states as follows:

---

Sanibel's admission that the Invoice "provided for the use of a subset of the photographs from the Pre-Existing Images collection until November 30, 2019." (Doc. 49 at 5; Doc. 38-1 at 10–11). However, these admissions are so vague that the Court cannot agree with Mr. Roskovensky's interpretation that Sanibel has admitted that it was not allowed to use the Pre-existing Interior Images.



(Doc. 50-6).

Ambiguities exist when a document can reasonably be interpreted as having more than one meaning. *Smith v. Shelton*, 970 So.2d 450, 451 (Fla. 4th DCA 2007). Here, the Invoice clearly states that Sanibel is entitled to "temporary use of images" of the Property until November 30, 2019.  (Doc. 50-6).  While Mr. Roskovensky argues that the term "images" is "clearly an ambiguous term reasonably susceptible to more than one interpretation," this argument fails when the Invoice is construed as a whole.  (Doc. 44 at 10).  *See Orange & Blue Constr., Inc. v. HDI Glob. Specialty SE*, No. 19-CV-81707, 2020 WL 6343332, at *3 (S.D. Fla. June 18, 2020) ("Courts cannot determine the meaning of a contract by looking at only a part of the contract,

but instead must construe it as a whole.") (citation and internal quotation marks omitted); *DeMarco v. T.D. Bank, N.A.*, No. 16-80442-CIV, 2017 WL 2892255, at *4 (S.D. Fla. Apr. 26, 2017) ("a court should read the contract as a whole, giving effect to each of the various provisions of the agreement if it can reasonably be done"). Indeed, the Invoice plainly modifies the term "images" by providing an "images download link." (Doc. 50-6). The Court therefore finds that the term "images," as used in the Invoice, meant the images available at that download link, which the parties agree provided access to all of the Pre-existing Images. (Doc. 36 at 2; Doc. 49 at 10; Doc. 50-4 at 4; Doc. 50-6).

While Mr. Roskovensky urges the Court to look beyond the four corners of the Invoice in order to find a narrower definition of the term "images," doing so would be inappropriate because "[p]arol evidence is inadmissible to contradict, vary, or modify terms which are unambiguously contained within a written agreement." *Prime Homes, Inc. v. Pine Lake, LLC*, 84 So. 3d 1147, 1152 (Fla. 4th DCA 2012). The Court therefore rejects Mr. Roskovensky's argument and finds that the Pre-existing Interior Images were subject to the license created by the Invoice.

That is not, however, the end of the Court's inquiry because Mr. Roskovensky also claims Sanibel committed copyright infringement when it acted outside the scope of the license by continuing to use the Pre-existing Images after November 30, 2019.[13] Specifically, Mr. Roskovensky identifies one of the Pre-existing Interior

---

[13] Mr. Roskovensky's argument on this point is muddled. In his brief, Mr. Roskovensky suggests that Sanibel committed copyright infringement when it used the *exterior* photographs after November 30, 2019. (Doc. 49 at 11). However, Mr.

Images, a photograph of the Property's bathroom (Doc. 50-5 at 12), which Sanibel continued to display on its website through at least January 2020. (Doc. 50 at ¶¶ 29-30).  The Court must therefore attempt to determine the duration of the license's term.[14]

Mr. Roskovensky is correct that the Invoice expressly states that Sanibel was permitted to use the images "until November 30th, 2019."  (Doc. 50-6).  However, as Sanibel points out, the Invoice also purports to provide a "license . . . for six months." (Doc. 50-6; Doc. 54 at 4).  Neither party attempts to reconcile this inherent inconsistency—Mr. Roskovensky's briefing avoids it while Sanibel's merely points it out in passing. (Doc. 54 at 4).

Here, the two conflicting license durations result in patent ambiguity.  *Crown Mgmt. Corp. v. Goodman*, 452 So. 2d 49, 52 (Fla. 2d DCA 1984) ("[A] patent ambiguity is that which appears on the face of the instrument and arises from the use of defective, obscure, or insensible language."); *Nationstar Mortg. Co. v. Levine*, 216 So. 3d 711, 716 (Fla. 4th DCA 2017) (holding internal contradiction constituted a patent ambiguity because it appeared on the face of the agreement).  Because the ambiguity is patent, the Court may not consider parol evidence to interpret the

---

Roskovensky has not supplied any proof that Sanibel used the exterior Pre-existing Images after November 30, 2019, and in fact has not even produced any of the exterior Pre-existing Images to the Court. (*See* Doc. 50-1 at 1−13). The Court will therefore consider whether any use of the Pre-existing Interior Images, after November 30, 2019, constitutes copyright infringement.

[14] The Court rejects Sanibel's argument (Doc. 36 at 4−7) that Mr. Roskovensky cannot state a claim for copyright infringement if Sanibel possessed a license to use the images because, as explained above, a copyright infringement claim could still lay if Sanibel exceeded the scope of the license.

license.  *USAA Gen. Indem. Co. v. Snow*, No. 8:19-CV-944-T-33TGW, 2020 WL 5960665, at *4 (M.D. Fla. Oct. 8, 2020) (applying Florida law); *Bd. of Regents, Univ. of S. Fla. Bd. of Trustees v. Rowsey*, 320 So. 3d 954, 962 (Fla. 2d DCA 2021).

Because the Court does not find any of the rules of construction in Florida contract law (*i.e.,* "custom and usage," or public policy) applicable in this case, the Court must therefore rely on the "established Florida law that any ambiguity in a contract must be construed against the drafting party," Mr. Roskovensky.  *MDS (Canada), Inc. v. Rad Source Techs., Inc.*, 822 F. Supp. 2d 1263, 1306 (S.D. Fla. 2011), *aff'd in part, question certified*, 720 F.3d 833 (11th Cir. 2013), *certified question answered*, 143 So. 3d 881 (Fla. 2014), and *aff'd*, 579 F. App'x 700 (11th Cir. 2014); *Cost Recovery Servs. LLC v. Windstream Corp.*, No. 1:02-CV-00131-MP-AK, 2010 WL 11515513, at *2 (N.D. Fla. May 3, 2010) ("Under the doctrine of *contra proferentem*, the patent ambiguity must be construed against the drafter of the contract"); *see also Arriaga v. Fla. Pac. Farms, L.L.C.*, 305 F.3d 1228, 1247 (11th Cir. 2002) (listing Florida's rules of textual construction).

As a result, the Court concludes that the license granted Sanibel a six-month term from the date it was issued—August 22, 2019.  Specifically, Sanibel had a temporary license to use the Pre-existing Images through at least February 22, 2020.  Because Mr. Roskovensky has not claimed, let alone proven, that Sanibel used the Pre-existing Interior Images after February 22, 2020, the Court will **GRANT** Sanibel's Motion for Summary Judgment with respect to the interior images contained as part of the Pre-existing Images.

**D. Sanibel's License to use the Second Set of Images**

Sanibel also claims that the Invoice provided it with a nonexclusive license to use the Second Set of Images.  (Doc. 36 at 2).  Mr. Roskovensky rebuts this argument, pointing out that at the time the Invoice was created, the Second Set of Images did not exist and Sanibel had not yet even hired Mr. Roskovensky to create them. (Doc. 44 at 5, 11; Doc. 50 at ¶ 14; Doc. 50-4 at 3).[15]  Based on its construction of the Invoice's term above, the Court agrees with Mr. Roskovensky that the Second Set of Images were not subject to the license created by the Invoice because they were not available through the download link contained in the Invoice.

However, the Court finds that there is a genuine dispute of material fact as to whether Mr. Roskovensky provided Sanibel with an implied license to use the Second Set of Images.  An implied license is created when: "(1) a person (the licensee) requests the creation of a work, (2) the creator (the licensor) makes that particular work and delivers it to the licensee who requested it, and (3) the licensor intends that the licensee copy and distribute his work."  *Thornton v. J Jargon Co.*, 580 F. Supp. 2d 1261, 1281 (M.D. Fla. 2008) (quoting *Nelson–Salabes, Inc. v.*

---

[15] Mr. Roskovensky also claims that Sanibel admitted "it did not have a license or other authorization to utilize the [Second Set of Images]."  (Doc. 49 at 14).  Again, Mr. Roskovensky does not provide a citation for this statement, but the Court presumes that Mr. Roskovensky is drawing from the RFAs, specifically the admission that "Defendant was not authorized to use, post or distribute images created or owned by Plaintiff in the United States at the time of the uses alleged in the Complaint." (Doc. 49 at 5; Doc. 38-1 at 10). The Court finds that this admission is too overly broad and non-specific to support a finding that Sanibel did not have a license to use the Second Set of Images.

*Morningside Dev., LLC*, 284 F.3d 505, 514 (4th Cir. 2002)) (internal quotation marks omitted); *see Hoeltzell v. Caldera Graphics*, No. 11-21245-CV, 2012 WL 13012954, at *4 (S.D. Fla. June 11, 2012).  An implied license may be granted orally or implied from conduct.  *Jacob Maxwell, Inc. v. Veeck*, 110 F.3d 749, 752 (11th Cir.1997).  To determine if one exists, a court should "look at objective factors evincing the party's intent, including deposition testimony and whether the copyrighted material was delivered without warning that its further use would constitute copyright infringement."  *Wilchombe*, 555 F.3d at 956 (citation and internal quotation marks omitted).

Here, the undisputed facts show that Sanibel requested that Mr. Roskovensky create the Second Set of Images (Doc. 50 at ¶ 18; Doc. 36 at 1−2) and that Mr. Roskovensky delivered the Second Set of Images to Sanibel and informed Sanibel, via email, that the photographs were "finished and ready for use."  (Doc. 50 at ¶ 20; Doc. 50-4 at 11).  Furthermore, the text of the Invoice indicates that a second photoshoot was contemplated.  Specifically, the Invoice states that the $75 fee for utilization of photographs from the Pre-existing Images provided to Sanibel via the link set forth on the Invoice "will be applied towards . . . the new reshoot photo session."  (Doc. 50-6).

Mr. Roskovensky's email did not warn Sanibel that if it used the Second Set of Images prior to rendering payment, it would commit copyright infringement. (Doc. 50-4 at 11).  The Court also notes that in the parties' prior course of dealing,

when Mr. Roskovensky licensed the Pre-existing Images to Sanibel, he allowed Sanibel to begin using the images before paying for the license.  (Doc. 50-4 at 4).

While the Court reads Mr. Roskovensky's email to strongly imply that he intended Sanibel to use the Second Set of Images immediately (Doc. 50-4 at 11), Mr. Roskovensky's declaration states that he only intended Ms. Plein to "view the various photographs" and that Sanibel's right to use the Second Set of Images was "predicated" on "paying [him] for [his] services."  (Doc. 50 at ¶¶ 20, 22).  Although courts in other copyright cases have been unwilling to find that payment is a condition precedent to use, the Court concludes that Mr. Roskovensky's declaration is sufficient to create a genuine dispute of material fact as to whether the requirements for an implied license have been met.  *See, e.g.*, *Odom v. Navarro*, No. 09-21480-CIV, 2010 WL 11505459, at *4 (S.D. Fla. Mar. 11, 2010) (finding that an implied license was created even though defendants withheld payment); *Jacob Maxwell, Inc.* 110 F.3d 749 at 753–54 (finding that a songwriter had granted an implied license to defendant to play a song, that the license was not conditioned on prior payment or public recognition, and noting that conditions precedent are disfavored unless required by the plain language of a contract).

Because the Court finds that there is a genuine dispute of material fact as to whether Sanibel possessed a license to use the Second Set of Images, the Court therefore **DENIES** Sanibel's Motion for Summary Judgment with respect to the Second Set of Images.

## CONCLUSION

Having carefully reviewed the entire record and evaluated the arguments and applicable law, the parties are strongly recommended to again consider settlement negotiations.  Should the parties represent that they desire to enter into good-faith settlement negotiations, the Court would invite a joint motion to stay these proceedings.

**For the foregoing reasons, the Court Orders as Follows:**

Defendant Sanibel Captiva Island Vacation Rentals, LLC's Motion for Summary Judgment (Doc. 36) is **GRANTED in part** and **DENIED in part**.

Plaintiff Peter Roskovensky's Motion for Summary Judgment (Doc. 49) is **DENIED**.

**ORDERED** at Fort Myers, Florida on March 15, 2024.

**JOHN L. BADALAMENTI**
UNITED STATES DISTRICT JUDGE